**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HECTOR GONZALEZ, | : | CIVIL ACTION NO. 3:14-2104 |
| **Plaintiff** | : | **(JUDGE MANNION)** |
| **v** | : | |
| JOHN KERESTES, <u>et al</u>., | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

**I. <u>Background</u>**

Plaintiff, Hector Gonzalez, an inmate formerly confined[1] in the State Correctional Institution, Mahanoy, Pennsylvania, ("SCI-Mahanoy") filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1, complaint). The named Defendants are the following SCI-Mahanoy employees: John Kerestes, Superintendent; Karista Tobios, Unit Manager; and Chris Collins, former SCI-Mahanoy Nurse Practitioner. <u>Id</u>.

By Order dated February 10, 2015 all Defendants, except Chris Collins, were dismissed from the above captioned action. (Doc. 37).

Presently before the court is Defendant Collins' motion to dismiss, filed

---

[1]Plaintiff is currently confined in the Greene State Correctional Institution, ("SCI-Greene") Waynesburg, Pennsylvania.

pursuant to Federal Rule Civil Procedure 12(b)(6). (Doc. 40). In his motion, Defendant Collins argues that Plaintiff's action should be dismissed for Plaintiff's failure to properly exhaust his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), and, alternatively, that the allegations in Plaintiff's complaint fail to raise an Eighth Amendment deliberate indifference claim. Id. Because matters outside the pleadings, which cannot be excluded, have been presented to the Court, by Order dated February 8, 2016, the Court converted Defendant Collins' motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and afforded the parties additional time for supplemental filings. (Doc. 78). The motion has been fully briefed, and is ripe for disposition. For the reasons set forth below, the Court will grant Defendant's motion for summary judgment.

## II. **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely

3

disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir.1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

4

### III. <u>Statement of Facts</u>

From the pleadings, declarations, and exhibits submitted therewith, the following pertinent facts can be ascertained from the record as undisputed.

On January 27, 2014, Plaintiff filed Grievance No. 494971, stating the following:

> I am suing SCI-Mahanoy for negligence for housing me on top tier on JA 51 when Medical put in an order to house me on bottom tier. On 1-26-14. I told the block CO on JA, Nurse Karen and the block Sgt I was dizzy, had a headache. If check the camera it shows me falling backwards, falling down the steps. Even Capt Hoffman witnessed the video of me falling. So I also wrote to the Office of Professional Responsibility. My family is going to contact a lawyer.
>
> I still feel pain in my back shoulder left side. I also wrote to the superintendent informing him I was took (sic) to the outside hospital. They took cat scan of my back shoulder, neck. So I want 150,000 or I will take the prison to court and sue for 250,000.

(Doc. 41-1 at 17-18, Official Inmate Grievance).

On January 29, 2014, Plaintiff supplemented Grievance No. 494971 with the following:

> I was told by Mr. Kelner my counselor that I was order by staff to stay in my cell. Then why did the block sergent (sic) open my cell. I hit my button to get a sick slip to go to sick call. When I talked to Nurse Karen if (sic) told me if I wanted to go to medical. At the time I didn't' believe it was that serious. Also I never received I (sic) direct order to stay in my cell. I was told to go lay down so I can rest. Mr. Kelner stated to me he has video the CO did help me walk up the stairs. I never refused to go to medical. That is

5

why I wanted a sick call slip. Oh yea, I wrote my people to call
Shirley Moore at Central Office. The staff never gave me a direct
order to lock up. If he did order me in my cell to stay in why did
Sgt. let me out of my cell. Staff put my life in danger. If I would of
been paralyzed (sic) or even killed my family would had a
multimillion law suit. Now you can check the camera video don't
lie now if you Mahanoy try some sneaky way of getting out of it by
lying I have witnesses also that will testify in court. I can get really
serious when it comes to my safety and all I want is 150,000 or
we can talk and don't take this to court.

(Doc. 41-1 at 15-16, Official Inmate Grievance).

On February 10, 2014, Plaintiff's grievance was denied as follows:

Your grievance states that you fell down the steps due to the
negligence of SCI-Mahanoy Staff. You claim that the fall
sustained by you was in relation to your housing unit assignment
which placed you on the top tier. You go on to demand
$150,000.00 for the event that took place but if the prison will not
negotiate then you state that you will take the prison to court for
$250,000.00.

I have conducted an investigation into your grievance which
included the viewing of the CCTV video of that evening. The
circumstances surrounding your grievance appear to be a
calculated attempt by you to obtain monetary compensation
through a fraudulent claim. I will attempt to break this down by
section so it can be easily understood.

Your assertion that you were assigned bottom tier status by
medical is correct. The status was updated to reflect this as
recent as 09/25/2013. That being said, you were released from
the Restricted Housing Unit and assigned to J/A cell 2051 on
12/09/2013. When inmates are released from the RHU it is
common practice that each inmate's medical housing
recommendation are identified. Due to unknown circumstances,
your medical housing recommendation were inadvertently

6

undetected. This can be contributed to a number of factors. What is undeniable is that you were aware of the restriction that was placed on you but never approached the Unit Manager or anyone else to advise them of the error.

As for the CCTV video detailing your fall, I have reviewed it multiple times. On 1/27/14 at 2040 you began to ascend the stairs on J/A. You go up approximately 5 steps before passing to look down behind you. This looks as if you are attempting to see just how far you will fall if you leave go of the railing. You then proceed to drink the remainder of your coffee at which time you sway backwards. An Officer then appears and renders assistance. Once the Officer is there, you without hesitation or any sign of distress, proceed to go up the remainder of the stairs with ease. Although you advise the Officer that you have a headache and feel dizzy, you refused any medical treatment when offered. The Officer then escorted you to your cell and asked again whether you wanted medical attention to which you replied "no." The Officer then states that he told you to take it in for the night.

At 2044 you took it upon yourself to exit the cell and stroll down the stars and across the dayroom. At no time do you appear to be in any distress and essentially travel as though you have no symptoms of unsteadiness. Lastly, you proceed back over to the stairs, climb to approximately the same spot you were seen swaying earlier. This time you don't hesitate and leave go of the railing. The factors leading to your fall are undeniable and documented on the CCTV system and the J/A Unit Logbook. I believe your initial attempt was thwarted by the Officer when you hesitated while trying to muster the courage to fall. If in fact you were having medical issues, you should have accepted the multiple offers to be seen by medical. You also should have informed someone of your medical restrictions that dictated you to be on the bottom tier. This appears to be unscrupulous effort to defraud the Commonwealth for monetary gain.

(Doc. 41-1 at 11, Initial Review Response).

Plaintiff appealed the denial of his grievance to the Facility Manager, stating:

> I already know what is your response, so please do what your are going to do, so I can send this to central office so I can begin my law suit A/S/A/P. Oh yea, of course the Grievance Coordinator is going to say I faked it and I don't know what Mr. Evans was looking at I fell on 1-26-14 not 1-27-14, please do not get rid of the video, because my lawyer will need to review it, and I will be suing.
>
> Oh yea, if it looked like I faked the fall then put in a frivolous grievance, I'm pretty sure security would had given me a DC-141. I would of been in the RHU!

(Doc. 41-1 at 10, Appeal to Facility Manager Grievance).

On February 12, 2014, the Facility Manager, denied Plaintiff's appeal, indicating that his review of the documents indicates that Unit Manger Evans had properly researched Plaintiff's issues and provided Plaintiff with an appropriate response. (Doc. 41-1 at 9, Facility Manager's Appeal Response).

On February 19, 2014, Plaintiff filed an appeal to final review, which was denied on May 5, 2014, as follows:

> You are alleging negligence as SCI-Mahanoy housed you on the top tier although medical had an order to house you on the bottom tier. You state that you informed staff of you being dizzy and having headaches and ended up falling down the stairs. You state that you were told by your counselor that staff ordered you to stay in your cell and that you never refused to go to medical. You then state that you were never given a direct order to stay in your cell. You feel that your life was put in danger. Your concerns have

been reviewed. Review of the record indicates that you are correct that you should have been housed on the bottom tier; this was an oversight by staff. However, you were aware of your lower tier housing and did not bring this to staff's attention when you were housed on the top tier. Mr. Evans reviewed the video footage from 1/27/2014, the day of your fall, and found that it appears as though this was a calculated attempt by you. Records reflect that the video showed that you attempted to fall down the steps prior; however, your attempt was thwarted by an officer who offered assistance when you were witnessed swaying backwards. The video footage showed that after the officer's assistance, you continued to your cell without hesitation or signs of distress and climbed the rest of the steps with ease. Records reflect that you advised the officer that you felt dizzy and had a headache; however, you refused medical attention when it was offered to you. You were advise by the officer to take it in for the night. However, approximately four minutes later, you took it upon yourself to exit your cell and walk down the stairs to the dayroom without any signs of unsteadiness or distress. You then proceeded back to the stairs where you climbed to about the fifth or sixth step, the spot where you swayed a few minutes earlier, and let go of the railing causing you to fall. Records reflect that you were seen by medical and transported to the emergency room for evaluation then returned to SCI-Mahanoy and placed in the infirmary for observation.

Upon review of your appeals, you seem to mainly dispute the date of the incident. You state that this fall occurred on 1/26/2014, not 1/27/14 as stated by Mr. Evans in the initial review response. This office was in contact with Mr. Evans who indicated that the event did take place on 1/26/2014, not 1/27/2014. This was a typographical error. In your appeal to final review you state that you were released from the RHU and placed on the top tier of J unit on 12/5/2013, not 12/9/2013 as Mr. Evans stated in the initial review response. Records reflect that you were actually released from the RHU on 12/6/2013 and placed on J unit on 12/6/2013. You further state that you did not realize that you were placed on the top tier, you were just happy to be out of the RHU; however,

9

you were housed in the cell (2051) on the top tier from 12/6/2013 until 1/27/2013 but did not say anything to staff regarding your medical restriction. It seems as though you would have realized that you were housed on the top tier when you had to climb stairs to get to the cell you were housed in from 12/6/2013 until 1/27/2014. There is no evidence to suggest that you were intentionally placed on the top tier to place you in danger of any kind. As stated, this was an oversight on staff's part and you did not alert staff to this error. Therefore, your appeal to final review is denied as there is no evidence to support your claims. Your requested relief is also denied.

(Doc. 41-1 at 1-2, Final Appeal Decision).

On November 3, 2014, Plaintiff filed the above captioned action in which he states that in January, 2002, he "contracted toxoplomis due to [his] HIV+ Status" and, as a result, he gets dizzy and passes out for no reason. (Doc. 1, complaint at 3). He claims that in February, 2009, he "got really dizzy in [his] cell and felt (sic) back on the cabinet in the cell and cut [his] back." Id.

On September 23, 2013, Plaintiff states that he went to sick call, complaining of being dizzy and "was afraid of falling down the steps while being housed on AA Unit 62 cell." Id. Plaintiff was "seen by Chris Collins CRNP" who "then put a medical restriction for [Plaintiff] to be on bottom tier/bunk." Id.

On December 5, 2013, Plaintiff states that he was "released from the RHU to J Block 51 cell top tier." Id. On December 19, 2013, Plaintiff signed

up for sick call and was seen by Chris Collins. Id. Plaintiff "complained of getting dizzy and [he] was afraid of falling down the steps." Id. Collins ordered Plaintiff "have [his] sugar checked twice a day for five days." Id.

On January 26, 2014, Plaintiff complained to Nurse Karen that he was dizzy and had a headache. Id. She gave him Tylenol. Id. Plaintiff states that he then "came back to the block, walked up the steps and felt dizzy again." Id. The block CO helped him to his cell so that he could lay down." Id. After a few minutes, Plaintiff claims he "hit [his] cell button to get a sick call slip." Id. Plaintiff states that he was dizzy walking up to the desk and on his way back to his cell and that "on [his] way back to [his] cell [he] walked up the stairs" and "felt dizzy and felt [himself] falling backwards" as he "tried to hold on to the railing." Id. Plaintiff then "fell down the steps hitting [his] lower back, left shoulder and head." Id. Plaintiff was brought to an outside hospital, treated and returned to SCI-Mahanoy. Id. Upon his return, he was listed for chronic care, given a cane to stabilize his walking, and received physical therapy. Id. He also claims he "was told by Chris Collins CRNP and Ron Siejak that due to [his] diet [his] back injuries will take longer to heal." Id.

For relief, Plaintiff seeks damages "for the deliberate indifference of Chris Collins when told of [his] housing restriction he did not contact

11

[Plaintiff's] housing unit when [he] went to sick call on 12-19-2013." (Doc. 1, complaint at 4).

## IV.  **Discussion**

### A.  **The Prison Litigation Reform Act**

Section 1997e(a) of title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit. Booth v. Churner, 532 U.S. 731, 739 (2001). Failure to exhaust available administrative remedies is an affirmative defense. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). As such, the failure to exhaust available administrative remedies must be pleaded and proven by the Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are provided for in Department of Corrections Administrative Directive 804 ("DC-ADM 804"). This policy establishes the Consolidated Inmate Grievance Review System, through which inmates can seek to resolve issues relating to their incarceration. The first step in the inmate grievance process is initial review. Id. Grievances must be submitted for initial review within 15 working days after the event upon which the grievance is based. Id. After initial review, the inmate may appeal to the superintendent of their institution. Id. Upon completion of the initial review and the appeal from the initial review, an inmate may seek final review. Id.

Courts within the Third Circuit and the Middle District have consistently imposed a procedural default component on the exhaustion requirement that requires inmates to "fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court." McClintic v. Bickell, No. 1:14-CV-2005, 2015 WL 4207229, *3 (M.D. Pa. July 10, 2015) (citing Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004)). "Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court." Id. at *3 (citing Spruill, 372 F.3d 218). Indeed, an "untimely or

otherwise procedurally defective administrative grievance" fails to satisfy the exhaustion requirement of the PLRA and the failure to properly "exhaust administrative remedies" is a bar to "filing suit in federal court." See also Woodford v. Ngo, 548 U.S. 81, 83-84, 92 (2006).

Chief Judge Conner's recent opinion in McClintic is instructive as to the issue of exhaustion in the instant action. In McClintic, an inmate plaintiff brought a §1983 claim, alleging that he was assaulted by another inmate and that the named defendants failed to protect him, subjecting him to cruel and unusual punishment. 2015 WL 4207229 at *1. Chief Judge Conner noted that a grievance had been filed relating to the alleged assault. Id. at *1. The grievance specifically identified some—but not all—of the individuals whom McClintic was trying to sue. Id. at *1, *5 (noting that the grievance identified Morningstar, Harris, Kauffman, Garmen, Taylor, Jones, and Shalters but that it did not identify Bickell, Eckard or Johnson). As it related to the failure to identify these three individuals, Chief Judge Conner granted summary judgment in their favor and reasoned as follows:

> McClintic is unable to overcome the **glaring defect of failing to identify defendants** Bickell, Eckard, and Johnson in the grievance. "[I]t is clear, regardless of the purpose of the requirement, that Spruill requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." Hemingway v. Ellers, 2008 WL 3540526, *11 (M.D. Pa. 2008). Under Spruill, it is

plaintiff's burden to explain why he did not name a defendant in the grievance. See Spruill, 372 F.3d at 234 ("Spruill did not[] [name Brown in his grievance] and has offered no explanation for his failure to do so."). McClintic admits that he failed to name defendants Bickell, Eckard, and Johnson in the grievance, and states that the grievance only named the individuals "directly involved" in the alleged incident. (Doc. 27, pp. 2, 7). He further states that he would have named these defendants if he knew "beforehand that they weren't [going to] [right] [their] wrong." (Id. at p. 2). Defendants Bickell, Eckard, and Johnson are entitled to an entry of summary judgment based on McClintic's failure to name them in the original grievance. See Williams v. Pennsylvania Dept. of Corr., 146 Fed. App'x. 554, 557 (3d Cir. 2005) ("in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant [on the grievance form] constituted a failure to property exhaust his administrative remedies under the PLRA").

Id. at *5 (emphasis added).

As is demonstrated by the record, Plaintiff initiated a grievance related to his fall, however, at no point does he argue that the medical restrictions and/or care provided by Defendant, Chris Collins, were deficient. To the contrary, Plaintiff's focus in his initial grievance and subsequent appeals is not the medical care rendered, but rather the fact that he was placed in a top tier cell, in error by the DOC staff, notwithstanding the housing restrictions ordered by the Medical Department. Plaintiff does not argue that Defendant Collins was responsible for this error, nor does he raise in his grievance the instant claim before this Court, namely Defendant Collins' failure to intervene during the December 19, 2013 sick call visit. In fact, Defendant Collins is not

mentioned by name at all in Plaintiff's grievance. This "glaring defect" means that Plaintiff did not properly and fully exhaust his administrative avenues and, as a result, judgment must be entered in favor of Defendant Collins.

**B.** **Eighth Amendment**

Although it is clear that Plaintiff has not properly exhausted his administrative remedies with respect to Defendant Collins, the Court finds that, notwithstanding exhaustion, Plaintiff has failed to establish that Defendant Collins was deliberately indifferent to Plaintiff, in violation of the Eighth Amendment.

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Rhodes v. Chapman, 542 U.S. 337, 349 (1981)). The Eighth Amendment prohibition against cruel and unusual punishment requires that prison officials provide "humane conditions of confinement" including "adequate food, clothing, shelter and medical care." Farmer, 511 U.S. at 832. "[T]o establish an Eighth Amendment violation an inmate must allege both an objective element—that the deprivation was sufficiently serious—and a subjective element—that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." Nami v. Fauver, 82 F.3d 63, 67 (3d

16

Cir.1996) (citing Wilson v. Seiter, 501 U.S. 294 (1991)). "The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities'." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.2000) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). To satisfy the subjective component, an inmate must prove that a prison official demonstrated "deliberate indifference" to a serious risk of harm to which the inmate was exposed. Farmer, 511 U.S. at 836–37. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Plaintiff's only allegation against Defendant Collins is that he was deliberately indifferent for failing to contact Plaintiff's housing unit regarding his bottom tier status, when he evaluated Plaintiff for a sick call on December 19, 2013. The record, however, is devoid of any evidence indicating that Plaintiff made Defendant Collins aware that Plaintiff was housed on the upper tier and that Collins ignored Plaintiff's complaints. Without a showing that Defendant Collins knew of and disregarded the risk to Plaintiff in being

17

assigned to the upper tier, Plaintiff fails to state a claim of deliberate indifference. See Farmer, 511 U.S. at 836–37. Rather, the record reveals that Collins, who issued the medical directive for bottom tier status, was never informed that the directive was not being enforced. In fact, Plaintiff, himself, acknowledges that he never advised anyone of his housing restriction, as he stated in his grievance appeal, he "didn't realize [he] was placed on the top tier" because he "was so happy to be out of the RHU." Thus, this is not a case of deliberate indifference, as there simply was no reason for Defendant Collins to intervene on December 19, 2013, to ensure that the bottom tier status he ordered was still in place. As such, Defendant Collins is entitled to summary judgment.

To the extent that Plaintiff may be raising an Eighth Amendment medical claim against Collins, in order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the

need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the

professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The record before this Court clearly demonstrates that Plaintiff received

20

medical attention, both before and after his fall, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff, himself, acknowledges that prior to his fall he was seen by Defendant Collins at two sick call visits, on September 23, 2013 and December 19, 2013. At both visits, Defendant Collins listened to Plaintiff's complaints, performed a medical assessment, and issued appropriate orders to address Plaintiff's Complaints, including issuing a bottom tier/bunk housing restriction and ordering tests to ensure that low blood sugar was not causing Plaintiff's symptoms. After his fall, Plaintiff was transported to an outside hospital where he underwent an X-ray and was given pain medication. Upon his return to prison, he was listed for chronic care, given a cane to stabilize his walking, and received physical therapy.  To the extent that Plaintiff alleges in his complaint that "Doctor Panya refuses to raise [his] Naprosyn" medication, initially, the Court notes that Plaintiff's allegation does not include Defendant Collins, and secondly, and more importantly, Plaintiff's allegation is nothing more than a disagreement with the course of action that the medical department took based on the symptoms presented and is not enough to state a §1983 claim. See Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (finding that mere disagreements over medical judgment do not

state Eighth Amendment claims as there are typically several acceptable ways to treat an illness). Defendant Collins is entitled to summary judgment.

Finally, Plaintiff argues in passing that "the Medical Department charges me for chronic care." (Doc. 1 at 3). Once again, there is no indication that Defendant Collins is personally involved in charging or collecting any fee from Plaintiff for medical services. Regardless, "there is nothing unconstitutional about a program that 'requires that inmates with adequate resources pay a small portion of their medical care'." Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir. 1997). As such, Defendant Collins is entitled to judgment as a matter of law.

## V. <u>Conclusion</u>

Based upon the undisputed facts of record, Defendant Collins is entitled to summary judgment for Plaintiff's failure to adequately exhaust administrative remedies and with respect to Plaintiff's Eighth Amendment claims. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated:    March 21, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-2104-01.wpd